### In re WORTHEN.

(Circuit Court, S. D. Ohio, W. D. January 10, 1891.)

CONSTITUTIONAL LAW—INTERSTATE COMMERCE—STATE REGULATIONS.

The Ohio statute of March 7, 1890, prohibiting the manufacture or sale of oleomargarine unless it be manufactured and sold in separate and distinct form, and in such manner as will at once advise the consumer of its real character,—free from any coloring matter or other ingredient which would cause it to look like butter,—is invalid as a regulation of interstate commerce, in so far as it would prevent the sale of oleomargarine, colored to look like butter, in the original packages in which it is imported from other states. Leisy v. Hardin, 10 Sup. Ct. Rep. 681, 135 U. S. 100, followed.

John W. Herron, for relator.
Matthews & Cleveland, for the sheriff of Hamilton county.

SAGE, District Judge, (orally.) The respondent was convicted under an act of the legislature entitled "An act to prevent deception in the sale of dairy products, and to preserve the public health," passed March 7, 1890.

That act prohibits the manufacture or sale of oleomargarine unless it be manufactured and sold in separate and distinct form,

and in such manner as will at once advise the consumer of its real character,—free from any coloring matter, or other ingredients which would cause it to look like butter, etc.

It appears from the testimony that the respondent, as the agent of Friedman & Swift, oleomargarine manufacturers at Chicago, is engaged, at the corner of Front and Main streets, in the city of Cincinnati, in disposing of original packages of oleomargarine, shipped from Chicago by his principals, and disposed of by him in the original packages.

The oleomargarine so shipped is composed of neutral lard, 50 per centum; oleo oil, 35 per centum; natural butter, 10 per centum; and cream and milk, 5 per centum; to which is added a sufficient quantity of salt and coloring matter, (an article called "annotto,") which, according to the testimony, is precisely what is used in coloring creamery butter.

This oleomargarine is a compound having the appearance, and almost exactly the taste, of butter; so nearly so that they cannot be distinguished, or that they can be distinguished only upon a careful inspection; and it is an article not deleterious as food.

Now, as I look at the decision of the supreme court in the case of Bowman v. Railway Co., 125 U. S. 465, 8 Sup. Ct. Rep. 689, 1062, there is scarcely a question left open for the consideration of this court.

The Ohio statute does not merely regulate or throw a guard about the sale of the product shipped by the manufacturers to the respondent, and sold by him; but it positively prohibits the sale.

Counsel for respondent rely upon the following passage from the decision in Leisy v. Hardin, 135 U. S., at page 122, 10 Sup. Ct. Rep. 681:

"These decisions [with reference to the police power of the states] rest upon the undoubted right of the states of the Union to control their purely internal affairs, in doing which they exercise powers not surrendered to the national government; but whenever the law of the state amounts essentially to a regulation of commerce with foreign nations or among the states, as it does when it prohibits, directly or indirectly, the receipt of an imported commodity, or its disposition, before it has ceased to become an article of trade between one state and another, or another country and this, it comes in conflict with a power which, in this particular, has been exclusively vested in the general government, and is, therefore, void."

Near the close of the opinion in this case, near the foot of page 124, 135 U. S., and page 689, 10 Sup. Ct. Rep., the chief justice says:

"Up to that point of time [when the property would become mingled with the common property within the state] we hold that, in the absence of congressional permission to do so, the state had no power to interfere by seizure, or any other action, in prohibition of importation and sale by the foreign or nonresident importer. Whatever our individual views may be as to the deleterious or dangerous qualities of particular articles, we cannot hold that any articles which congress recognizes as subjects of interstate commerce are not such, or that whatever are thus recognized can be controlled by state laws amounting to regulations, while they retain that character; although, at the same time, if directly dangerous in themselves, the state may take appropriate measures to guard against injury before it obtains complete jurisdiction over them."

That is, by way of illustration, if there should be an importation of dynamite, it could not, in defiance of the local law, be stored within the limits of the city of a state. The opinion continues:

"To concede to a state the power to exclude, directly or indirectly, articles so situated, without congressional permission, is to concede to the majority of the people of the state, represented by the state legislature, the power to regulate commercial intercourse between the states, by determining what shall be its subjects, when that power was distinctly granted to be exercised by the people of the United States, represented in congress; and its possession by the latter was considered essential to the more perfect Union which the constitution was adopted to create."

Now, by the act of congress of August, 1886, oleomargarine was undoubtedly recognized as an article of commerce, and put under the control of a national law, regulating its sale; following it not only through the course of manufacture, and regulating that, but following it also into the hands of the wholesale dealers; requiring that it should be so branded and marked as to make it impossible to practice upon any one able to read any fraud with reference to its character; and following it further into the hands of the retail dealer, requiring him to take out a license under the authority of the United States, and to brand the packages and mark them so as to prevent the deception of purchasers as to the real character of the article.

It is clear to my mind that it is the duty of this court to assume that this act will be enforced, and that the provisions which the legislative department have made to prevent fraud will be effective. The oleomargarine brought into the state in the original packages is within the protection of the constitution of the United States, and it can be sold in the original packages, entirely independently of the provisions of the state statute, and subject only to the provisions of the national statute.

But the instant an original package is opened, and its contents exposed for sale at retail, they thereby, to adopt the language of the supreme court, "become mingled with the property of the state, and subject in every respect to its law."

It would be practically a nullification of the provisions of the constitution of the United States to hold that the state, while it may not interfere with the importation within its limits of any article of commerce which it deems hurtful to its people, may, immediately upon its importation, throw its prohibition about it, and prevent its sale; and so, by defeating the object of the importation, effectually prevent the importation itself.

I do not say that the state statute is unconstitutional; on the contrary, I think that it is constitutional when applied to sales within the state of all oleomargarine there manufactured, and of the sale of broken packages of oleomargarine imported from other states or from foreign nations. I do not think that the federal constitution interferes in the least with the power of the state of Ohio to regulate or prohibit the manufacture or sale of oleomargarine in this state, or imported into this state, after once the original package has been broken; but the state law does not apply to, and can-

not be enforced against, sales in the original packages of oleo-margarine imported into the state.

My conclusion, therefore, is that the respondent has not been within the reach of the Ohio statute, and that it does not apply to the case made against him, and that he must be discharged.